**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

KENYATTA BRIDGES,

Plaintiff,

v.

THOMAS J. DART, Sheriff of Cook
County, and COOK COUNTY, ILLINOIS, a
municipal corporation,

Defendants.

No. 16 CV 4635

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

One night, plaintiff Kenyatta Bridges—then a pretrial detainee at the Cook County Department of Corrections—fell out of his top-bunk bed. Before the fall, a doctor had evaluated Bridges, determined he had suffered blunt head trauma, and prescribed him a bottom bunk. But the doctor's order went unfollowed, and Bridges was assigned to a top bunk. Bridges now brings § 1983 claims against Sheriff Dart and Cook County, arguing that the injuries he sustained from that fall were caused by their practice of ignoring medically necessary bottom-bunk prescriptions. Bridges also asserts that defendants had a policy of failing to provide inmates with medications regularly and on a timely basis. Defendants move for summary judgment. For the reasons discussed below, their motion is granted.

I.      **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Background

Plaintiff Kenyatta Bridges entered the Cook County Department of Corrections in February 2014. [88] ¶ 1.[1] Cook County Hospital medical records from March 26, 2014, note that Bridges had suffered "Blunt Head Trauma" and prescribe him a lower bunk. [96] ¶ 5; [94] at 6–7. Cook County Sheriff records show that on the same day, an alert was entered to assign Bridges to a lower bunk. [96] ¶ 2; [94] at 4. Despite the alert, Bridges was assigned to a top bunk, and on April 24, he fell out of bed. *See* [96] ¶¶ 2, 5; [88] ¶ 2.[2] In response to a grievance Bridges submitted after the

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the transcript's original page number. The facts are largely taken from plaintiff's responses to defendants' Local Rule 56.1 statements, [88], and defendants' responses to plaintiff's Local Rule 56.1 statements, [96], where both the asserted fact and the opposing party's response are set forth in one document. Any arguments raised in the Local Rule 56.1 statements, additional facts included in responses or replies, and statements that are unsupported by admissible evidence (or where a party fails to follow Local Rule 56.1's direction to cite to supporting material in the record) will be disregarded. Only facts that are properly controverted will be considered disputed.

[2] Bridges argues that defendants cannot rely on his deposition testimony because defendants failed to deliver a copy to plaintiff's counsel or to file the transcript on the docket, only sending a courtesy copy to the court instead. I granted defendants' motion to file a late copy of the deposition on the docket, finding that Bridges was not prejudiced because he had been present at the deposition and the transcript was available to him through the court reporter. This ruling came after Bridges had submitted his responses to defendants' LR 56.1 statements of fact in which he relies, in part, on this argument in refuting defendants' assertions. None of the statements of fact which plaintiff disputed solely because it came from

incident, a lieutenant wrote that Bridges did not have a bottom bunk prescription but would be moved to a different location within Cook County Jail where he could have a bottom bunk. [96] ¶ 2; [94] at 5. Before the incident, Bridges had never fallen out of bed. [88] ¶¶ 10–12. At his deposition, Bridges did not recall ever being diagnosed with a condition that could cause him to fall out of bed or voicing any concern when he was assigned a top bunk. *See* [88] ¶¶ 5, 8, 13–16; [91-1] at 25:21–27:4, 60:20–22, 62:14–23. Bridges was released from custody on June 2, 2014. [88] ¶ 17.

## III. Analysis

Bridges seeks to recover from defendants for injuries he asserts stem from their policy, custom, or procedure of ignoring inmates' medically-prescribed lower-bunk assignments, as well as from their practice or custom of failing to provide prisoners with prescribed medication regularly and on a timely basis. Bridges sues Sheriff Dart only in his official capacity. Official-capacity claims against the sheriff are treated as claims against the county. *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 765 (7th Cir. 2006). To prevail on any § 1983 claim, a plaintiff must show that the defendant violated his constitutional rights. *Grieveson v. Anderson*, 538 F.3d 763, 773 (7th Cir. 2008). To prevail on an official-capacity § 1983 claim, a plaintiff must also demonstrate that an official policy, widespread custom, or deliberate act of a county decision-maker was the moving force behind the constitutional violation. *Id.* at 771; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

---

his deposition testimony dictates the outcome of this case. *See, e.g.,* [88] ¶¶ 6, 9–16. And so, I reiterate that there was no undue prejudice to Bridges in excusing defendants' procedural error.

Objective reasonableness, not deliberate indifference, governs a pretrial detainee's Fourteenth Amendment due-process claim for inadequate medical care. *Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (discussing *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015)); *see also McCann v. Ogle Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018).[3] *Monell* liability is possible even if no individual official is found to have acted with necessary culpability to violate the defendants' constitutional rights if the policymaker acted with the requisite culpability[4] when enacting the policy at issue. *Miranda*, 900 F.3d at 344 (citing *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (*en banc*)).[5]

## A.     Low-Bunk Prescription

Though failure to address a pretrial detainee's serious medical conditions can give rise to a constitutional violation, *see Miranda*, 900 F.3d at 352, neither party addresses whether Bridges's medical condition was serious, whether denying him a medically-prescribed bunk necessarily constitutes denial of medical needs, or

---

[3] Neither party addresses Bridges's status as a detainee in its statements of fact. But Bridges alleges in his complaint—and defendants agree in their answer—that he was an arrestee and detainee at the time of the incident. [43] ¶ 3.

[4] Despite recognizing that objective reasonableness, and not deliberate indifference, applies to a pretrial detainee's claim against individual defendants, the Seventh Circuit discussed *Monell* liability under the deliberate-indifference standard. *See Miranda*, 900 F.3d at 344. For reasons discussed below, even under the objective-reasonableness standard, no reasonable juror could conclude that defendants' policy caused his injuries. In these circumstances, the outcome would be the same under a deliberate-indifference standard.

[5] Bridges also alleges that defendants violated his fourth amendment right to be free from unreasonable seizures, but he has not developed this theory. He fails to present any evidence in support of his fourth-amendment claim, or even to mention it in response to defendants' motion for summary judgment, and he therefore forfeits it. *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990).

whether defendants acted with the requisite state of mind. Because there is evidence Bridges had suffered blunt head trauma and that a doctor deemed it necessary to prescribe him with the low bunk, a reasonable juror could find that defendants failed to address Bridges's serious medical needs. But even assuming the county and the sheriff were objectively unreasonable in ignoring the risks associated with disregarding low-bunk orders, however, Bridges would not prevail on his *Monell* claims because no reasonable juror could conclude that defendants had a policy or custom that caused his injuries.

As evidence of a policy, Bridges points to five other Cook County Department of Corrections inmates who filed lawsuits between 2005 and 2012 to recover for injuries they claimed were sustained when their bunk prescriptions were ignored. Bridges relies exclusively on the allegations in the complaints and offers no additional evidence to substantiate them. Assuming these complaints are admissible evidence and not hearsay—because they are offered not for their truth but to show that defendants were aware of the problem—they are insufficient to allow a factfinder to conclude that an overarching policy, and not the decisions of an individual employee, were the moving force behind Bridges's injuries. *See* Fed. R. Evid. 801.

To hold a municipality liable for its informal practice, a plaintiff must show it was "so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006). To do so, a plaintiff must generally point to "more than one instance, or even three," of unconstitutional incidents undertaken pursuant to the alleged policy or

practice. *Thomas v. Cook Cnty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) (internal citations omitted); *but see Miranda*, 900 F.3d at 344 (noting that "a single incident can be enough for liability where a constitutional violation was highly foreseeable"). That on five separate occasions between 2005 and 2012 someone has allegedly ignored a bottom-bunk prescription is insufficient to infer that either the county or the sheriff's department acquiesced to its staff ignoring medical prescriptions for low bunks. There is no evidence from which to infer these were anything other than isolated incidents of misconduct or negligence on the part of individual employees, and no evidence to infer a connection among the incidents, such as common supervisors who would have been on notice of any pattern. Bridges must come forward with some evidence to establish *Monell* liability, and he has failed to do so. Moreover, to the extent Bridges argues that the County has a policy or practice of dishonestly answering complaints filed in federal court, he offers no evidence that such a policy resulted in Bridges falling out of his bed or in any other constitutional violation.

B.     **Remaining Claims**

In his operative complaint, Bridges also alleges defendants have a policy of failing to timely provide inmates with their medications. In a previous order, I dismissed Bridges's complaint that contained similar allegations because he failed to allege what medications he was prescribed, for what condition, when they were denied or delayed, or what injury he suffered as a result. *See Bridges v. Dart*, No. 16 CV 4635, Docket Entry 36 at 4 (N.D. Ill. Apr. 17, 2017). Because Bridges failed to cure

those deficiencies and presents no evidence or argument to demonstrate that he was denied any medical treatment aside from the low bunk, no reasonable juror could find for Bridges on this theory. And to the extent Bridges intended to replead any non-*Monell* claims against any individual defendants, those claims are time barred. *See id.*; *Bridges v. Dart*, No. 16 CV 4635, Docket Entry 27 at 2 (N.D. Ill. Dec. 28, 2016).

### C.    Sanctions

Defendants move for sanctions under Rule 11, arguing that Bridges's deposition testimony directly contradicted the allegations in the complaint and that plaintiff's counsel failed to exercise his affirmative duty of reasonable investigation into those allegations before submitting the complaint. *See* Fed. R. Civ. P. 11(b). The goal of Rule 11 is to deter baseless or frivolous filings and abusive litigation practices. *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1013 (7th Cir. 2004). The focus is what counsel knew at the time the complaint was filed, not what was subsequently revealed in discovery. *Id.* at 1014. Though Bridges may not have been able to support every allegation in the complaint through his own testimony, I do not find that the filing of the complaint was frivolous or that the allegations therein were baseless. Even if Bridges did not understand his own medical history or was unaware that he had been assigned a bottom bunk, there was evidence that a doctor evaluated him, noted he had suffered blunt head trauma, and decided that it warranted a low bunk. There is also evidence that the sheriff's department received a low-bunk alert for Bridges and ignored it, resulting in more severe injuries when Bridges fell out of bed and that Bridges filed a grievance after that incident. Based on this evidence, I

conclude that plaintiff's counsel did not file the complaint in bad faith or without adequate investigation.

## IV.    Conclusion

Defendants' motion for summary judgment [70] is granted. The motion for sanctions [74] is denied. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date:  January 29, 2019